**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**GARY WASHINGTON,**

                      **Plaintiff,**

**v.**                                          **Case No. 8:13-cv-2244-T-23KRS**

**COMMISSIONER OF SOCIAL SECURITY,**

                        **Defendant.**

_____

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the Complaint filed by Plaintiff Gary Washington seeking review of the final decision of the Commissioner of Social Security denying his claim for social security benefits, Doc. No. 1, the answer and certified copy of the record before the Social Security Administration ("SSA"), Doc. Nos. 14, 15, and the parties' Joint Memorandum.[1]   Doc. No. 20.

**PROCEDURAL HISTORY.**

In 2010, Washington filed applications for benefits under the Federal Old Age, Survivors and Disability Insurance Programs ("OASDI"), 42 U.S.C. § 401, *et seq.*, and under the Supplemental Security Income for the Aged, Blind and Disabled Program ("SSI"), 42 U.S.C.

---

[1] I required counsel for the parties to submit a single, Joint Memorandum with an agreed statement of the pertinent facts in the record.  Doc. No. 16.  Counsel for Plaintiff was ordered to identify and frame, in a neutral fashion, each of the disputed issues raised as grounds for reversal and/or remand, and counsel for the Commissioner was required to respond to each of those issues in the format set forth in the Revised Scheduling Order.  *Id.* at 4.

§ 1381, *et seq*. (sometimes referred to herein as the "Act"). He alleged that he became disabled on January 1, 2005 for purposes of OASDI and January 1, 2008 for purposes of SSI. R. 115, 122. He subsequently amended the alleged disability onset date for both applications to June 29, 2008. R. 34. In written disability reports, Washington alleged that he was disabled due to arthritis in his left hip and both knees, right leg numbness and gout. R. 150, 155, 202.

After his applications were denied initially and on reconsideration, Washington asked for a hearing before an Administrative Law Judge ("ALJ"). R. 83. An ALJ held a hearing on February 23, 2012. Washington, accompanied by an attorney, and a vocational expert ("VE") testified at the hearing. R. 29-51.

After considering the hearing testimony and the evidence in the record, the ALJ found that Washington was insured under OASDI through June 30, 2008. The ALJ concluded that Washington had not engaged in substantial gainful activity since the alleged amended disability onset date. R. 16.

The ALJ found that from June 29, 2008 through May 17, 2010, the record did not reveal that Washington had any severe impairments. *Id.* The ALJ observed that there was no evidence of a diagnosis or treatment before May 18, 2010, for any of the conditions that Washington alleged were disabling. R. 17.

The ALJ found that since May 18, 2010, Washington had osteoarthritis/degenerative joint disease and gout, which were severe impairments. *Id.* These impairments, individually and in combination, did not meet or equal a listed impairment. R. 17-18.

The ALJ concluded, as follows:

> I find that since May 18, 2010, the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can never climb ladders,

>ropes, or scaffolds, crawl or kneel, and only occasionally climb ramps or stairs, balance, stoop, or crouch. Additionally, the claimant needs to avoid concentrated exposure to cold, heat, wetness, humidity, the use of hazardous machinery and avoid concentrated exposure to other hazards, including unprotected heights.

R. 18; *accord* R. 19 ("Additionally, due to his osteoarthritis/degenerative joint disease he can never climb ladders, ropes, or scaffolds, crawl, or kneel and only occasionally climb ramps or stairs, balance, stoop, or crouch. Furthermore, due to his osteoarthritis/degenerative joint disease and gout he needs to avoid concentrated exposure to cold, heat, wetness, humidity, hazardous machinery and other hazards, and unprotected heights.").

The ALJ determined that, with this residual functional capacity ("RFC"), Washington could not return to his previous unskilled work as a construction laborer and dock laborer, both of which required a heavy level of exertion. R. 19, 38. After considering the testimony of the VE, the ALJ concluded that from May 18, 2010 through November 23, 2011, there was unskilled, light duty work available in the national economy that Washington could perform. R. 20-21. As of November 24, 2011, the day before Washington's 55th birthday, the ALJ determined that the Medical-Vocational Guidelines (the "Grids") dictated that there were no jobs that Washington could perform. Therefore, the ALJ concluded that Washington was disabled as of November 24, 2011 but not earlier. R. 21.

Washington sought review of the ALJ's decision by the Appeals Council. R. 7. On July 23, 2013, the Appeals Council found no reason to review the ALJ's decision. R. 1-3.

Washington now seeks review of the final decision of the Commissioner by this Court.

## JURISDICTION AND STANDARD OF REVIEW.

Washington having exhausted his administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g), as adopted by reference

in 42 U.S.C. § 1383(c)(3). A court's review of a final decision by the SSA is limited to determining whether the ALJ's factual findings are supported by substantial evidence, *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam), and whether the ALJ applied the correct legal standards, *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

### SUMMARY OF THE FACTS.

After a thorough review of the record, I find that the facts are adequately stated in the parties' Joint Memorandum and the ALJ's decision, which statement of facts I incorporate by reference. Accordingly, I will only summarize facts pertinent to the issues raised to protect Washington's privacy to the extent possible.

Washington was born in 1956. R. 115. He attended school through the eleventh grade. R. 47. Washington last worked full-time in 2004, and he last worked part-time in about 2008. R. 38-39.

Washington testified at the ALJ's hearing that he experienced pain in his legs, knees and other joints starting in about 2008. R. 43. In 2008, he suffered from flares of gout pain and swelling at least twice a month. When he experienced these flares, he had to lie down for two or three days. R. 44.

The medical records are sparse in part because Washington did not have money to seek medical treatment. R. 45. Washington was treated in 2008 at a walk-in clinic, but he did not complain of pain in his hips or knees, right leg numbness or pain or swelling from gout. R. 236-37.

On May 18, 2010, Washington again sought treatment at the walk-in clinic. He complained of pain in his left hip getting worse over time, pain radiating down his left leg and pain in his knees. R. 233. Upon examination, Kathy Williams, ARNP, found no abnormalities in

4

Washington's hips or knees. His gait, stance and balance were normal. R. 234-35. When Washington returned to ARNP Williams for a follow-up visit on June 29, 2010, he reported that pain and swelling in both knees had worsened in the previous week and that he had limited mobility in his right knee. His left hip also continued to hurt. R. 229. Upon examination, ARNP Williams observed abnormalities in Washington's hips and knees with limited range of motion, edema and mild erythema in the right knee. Her assessment was Gout and Compression Arthralgia – Pelvis/Hip/Femur. She prescribed medication. R. 230. On July 9, 2010, ARNP Williams examined Washington and provided him the results of tests she had performed. A uric acid test was high, indicative of gout. Washington was also pre-diabetic. R. 227.

On August 28, 2010, Michael D. Breglia, M.D., a board certified internist, examined Washington at the request of the Florida Division of Disability Determinations. Washington complained of pain in his left knee and both hips, which was aggravated by walking, bending and lifting. R. 239. He wore braces on both knees. R. 241. Upon examination, Dr. Breglia did not observe any joint swelling, erythema or deformity. R. 242. Muscle strength was 5/5 in the upper and lower extremities. R. 241. Washington walked with an antalgic gait. *Id.* He was able to squat and rise with moderate difficulty. He could rise from a sitting position without assistance and get up and down from the exam table. R. 242.

ARNP Williams continued to treat Washington through 2011. In September 2010, Washington complained of lower back and right knee pain, and tingling in his fingers for the previous two to three weeks. His gout was also getting worse. He had not been able to afford his medication. R. 283. Upon examination, ARNP Williams observed right knee edema but full range of motion. Washington's balance, gait and stance were normal. R. 284. In December 2010, Washington reported that his knees had been swollen for two weeks. R. 280. Upon

5

examination, ARNP Williams noted full range of motion although Washington complained of pain. She observed that Washington walked with a limp. R. 281.

On May 18, 2011, Washington complained of hip pain, and swelling and pain in both knees. R. 277. ARNP Williams observed that Washington was slow from sit to stand. R. 278. On August 24, 2011, Washington continued to complain of joint pain from arthritis and gout, and his feet ached and were swollen. R. 274. ARNP Williams confirmed on examination that Washington's feet showed abnormalities with mild edema of his great toes. He had an abnormal gait and stance, and he was slow from sit to stand. R. 275.

On January 5, 2011, Robert H. Kelly, D.O., prepared a physical functional capacity assessment after review of Washington's records. R. 265-72. Dr. Kelly found insufficient evidence of limitations before the date last insured for OASDI. R. 272.[2] As of the date of the assessment, Dr. Kelly opined that Washington could lift up to twenty pounds occasionally and ten pounds frequently. He could sit, stand or walk about six hours in an eight-hour work day. R. 266. He could occasionally engage in postural activities but never climb ladders, ropes and scaffolds. R. 267. He should avoid concentrated exposure to extreme cold and hazards. R. 269.

During the hearing, the ALJ asked the VE to assume a hypothetical person of Washington's education and work experience who could do the following:

> [He] can lift up to 20 pounds occasionally, lift and carry 10 pounds frequently. Stand and walk for about six hours out of an eight hour work day with normal breaks with no climbing of ladders, ropes, or scaffolding but occasionally ramps or stairs, balancing, stooping, but no kneeling or crawling. This person would need to avoid

---

[2] Dr. Kelly wrote: "Insufficient evidence for Tital [sic] 2." R. 272. The parties agree that Dr. Kelly meant to refer to Title II, Doc. No. 20 at 9, which is the provision of the Social Security Act that addresses disability under OASDI. *See Mathews v. Eldridge*, 424 U.S. 319, 323 (1976).

>concentrated exposure to cold, heat, wetness and humidity and concentrated use of hazardous machinery or other hazards and avoid concentrated exposure to unprotected heights.

R. 47-48. The VE testified that this person could not perform Washington's past relevant work. R. 48. The VE opined that this person could perform unskilled jobs requiring a light level of exertion, specifically mailroom clerk, small products assembler, and merchandise marker, which jobs were available in the national economy. *Id.*

## ANALYSIS.

Washington raises only two assignments of error. First, he contends that the ALJ's hypothetical question to the VE did not include some of the limitations in the ALJ's RFC finding. Second, he submits that the ALJ erred by finding that he did not have any severe impairments before May 18, 2010. I will address these assignments of error in turn.

*RFC and the Hypothetical Question to the VE.*

"In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002)(citing *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999)). Washington submits that, in the RFC assessment, the ALJ found that he could never climb ramps or stairs, balance, stoop or crouch and that the ALJ failed to include these limitations in the hypothetical question he posed to the VE. Doc. No. 20 at 12.

The Commissioner correctly objected that Washington's attorney inaccurately quoted the ALJ's decision. *Id.* at 5 n.2. The ALJ found in the RFC assessment that Washington could "never climb ladders, ropes or scaffolds," but that he could "occasionally climb ramps or stairs, balance, stoop, or crouch." R. 18. The ALJ accurately included the RFC limitations in the

hypothetical question to the VE, as follows: "[N]o climbing of ladders, ropes, or scaffolding but occasionally ramps or stairs, balancing, stooping . . . ." R. 47.[3]

Because Washington's first argument is based on an incorrect reading of the ALJ's decision, I recommend that the Court find that this assignment of error does not support reversal of the ALJ's decision.

*Severe Impairments Before May 18, 2010.*

Washington appears to rely on the opinion of Dr. Kelly to support his argument that he suffered from a severe impairment as of June 30, 2008, the date he was last insured under OASDI. Doc. No. 20 at 18-19. This argument is a misreading of Dr. Kelly's report.

In the caption of his report, Dr. Kelly checked a box indicating that Washington's date last insured was June 30, 2008. R. 265. In the comments section of the report, however, Dr. Kelly indicated that there was insufficient evidence to support a Title II disability application; that is, insufficient evidence to conclude that Washington had functional limitations arising from his impairments on or before June 30, 2008, the date he was last insured under OASDI. R. 272. Dr. Kelly relied on Dr. Breglia's opinion on August 28, 2010 as the basis for the functional limitations contained in his report. *Id.* Thus, Dr. Kelly's report supports the ALJ's conclusion that there was no evidence that Washington had functional limitations before May 18, 2010.

---

[3] Counsel for Washington does not argue that the failure to include the limitation to only occasional crouching made the hypothetical question to the VE incomplete. The *Dictionary of Occupational Titles* indicates that the three jobs identified by the VE as ones Washington could perform do not require crouching. *See* Mail Clerk, DICOT 209.687-26, 1991 WL 671813; Assembler, Small Products, DICOT 706.684-022, 1991 WL 679050; Marker, DICOT 209.687-034, 1991 WL 671802. Therefore, the failure to include the limitation to occasional crouching, if the issue has been preserved by Washington, is harmless.

Additionally, Washington's applications for benefits were based on the allegedly disabling conditions of arthritis in the left hip and both knees, right leg numbness and gout. R. 150, 155, 202. The ALJ correctly observed that Washington did not complain of these conditions or subjective symptoms arising therefrom when he was treated at a walk-in clinic in 2008. R. 17. The first time Washington complained of the allegedly disability conditions in the medical records in the record was May 18, 2010, the date on which the ALJ concluded that Washington had severe impairments. An ALJ does not err when the claimant cannot point to evidence in the record that an impairment was severe and impacted his ability to work as of a date earlier than the date selected by the ALJ. *See Eubanks-Glades v. Colvin*, No. 13-60029-CIV, 2013 WL 6116810, at * 1 (S.D. Fla. Nov. 20, 2013) (and cases cited therein).

For these reasons, I recommend that the Court find that Washington's second assignment of error is not well taken.

## RECOMMENDATION.

For the reasons stated above, I **RESPECTFULLY RECOMMEND** that the final decision of the Commissioner be **AFFIRMED**. I further **RECOMMEND** that the Court direct the Clerk of Court to issue a judgment consistent with its decision on this Report and Recommendation and, thereafter, to close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved

party from attacking the factual findings on appeal.

    Respectfully recommended this 21st day of November 2014.

                                    *Karla R. Spaulding*
                                    KARLA R. SPAULDING
                                UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Presiding District Judge
Courtroom Deputy Clerk
Counsel of Record